IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FREDRICK L. SIEFKES,

        Plaintiff,

v.                                                          Civ No. 03-313  JP/LFG

CORRECTIONS CORPORATION OF
AMERICA, INC., d/b/a TORRANCE COUNTY
CORRECTIONAL FACILITY, TORRANCE COUNTY,
DONALD DORSEY, individually and as Warden,
RAMIRO RODRIQUEZ, individually and as
Assistant Warden, and WILLIAM PENNYCUFF,
individually and as Chief of Security.

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On November 8, 2002 Plaintiff filed a Complaint for Deliberate Infliction of Injury,

Intentional Commission of a Wrongful Act, Intentional Infliction of Emotional Distress,

Negligence, Prima Facie Tort, Loss of Consortium and Violation of Civil Rights in state court.[1]

As Plaintiff's Complaint implied that his federal constitutional rights had been violated under the

color of state law, a claim that necessarily invokes 42 U.S.C. § 1983, Defendants removed the

action to federal district court.  (Doc. No. 1).  On March 17, 2003 Defendants filed a Motion to

Dismiss the Complaint Pursuant to FRCP 12(b)(6).  (Doc. No. 3).  On June 10, 2003 Defendants

filed a Motion to Dismiss Counts I and II of the Complaint (Doc. No. 18), which, apart from

Defendants' first Motion to Dismiss, provided "additional and independent legal ground in

---

[1]  The title of Plaintiff's Complaint included seven causes of action, however, the body of
the complaint failed to address Plaintiff's claim for loss of consortium.  Hence the Court will
consider Plaintiff's loss of consortium claim to be waived.

support of dismissal of Counts I and II."  Doc. No. 19 at 2.  Having considered the parties'
arguments and the relevant legal authority, the Court concludes that Defendants' Motion to
Dismiss the Complaint Pursuant to FRCP 12(b)(6) should be denied, and that Defendants' Motion
to Dismiss Counts I and II of the Complaint should be granted if Plaintiff does not timely amend
his Complaint in accordance with this Memorandum Opinion and Order.

*BACKGROUND*

On November 11, 2000 Plaintiff was employed as a correctional officer at the Torrance
County Detention Facility (TCDF).  Although Plaintiff worked at TCDF, he was employed by a
private corporation, the Corrections Corporation of America (CCA), which had entered into a
contract with Torrance County to operate the County's detention facility.

In addition, Torrance County had a contract with the State of New Mexico to provide
additional bed space for overflow inmates from the state's Correction Department.  Under the
terms of that contract, the County and CCA were obligated to satisfy, in addition to the standards
set forth by the American Correctional Association, "all federal, state and local codes applicable"
to TCDF.  Plaintiff's Complaint at ¶ 29.  The contract also directed any correction officer
employed by Torrance County or CCA to "attend the [New Mexico Corrections Department]
Training Academy and pass the same courses provided to comparable NMCD
trainees/employees."  *Id*. at ¶ 34; Agreement Between New Mexico Corrections Department and
Torrence County, New Mexico at ¶¶ 1.0 & 34.0.

According to Plaintiff's Complaint, the County and CCA failed to satisfy their contractual
obligations with the state or otherwise meet reasonable standards for the operation of a
corrections facility because (1) Plaintiff did not receive adequate training before beginning his job

as a corrections officer, (2) Plaintiff did not receive any training on how to handle maximum-security inmates, (3) Plaintiff did not receive his state certification by the New Mexico Department of Corrections, and (4) TCDF was chronically understaffed with correctional officers.

Plaintiff's Complaint also alleges that in order to maximize profits at TCDF, CCA made a decision to house maximum-security inmates there.  This management decision was problematic for CCA, however, because TCDF was accredited simply as a medium-security facility.  To house maximum-security inmates, who came from states other than New Mexico, CCA reclassified them as medium-security inmates before sending them to TCDF.  CCA never informed the corrections officers at TCDF that the transferred inmates had their status re-classified from maximum-security to medium-security.

On November 11, 2000 Plaintiff was assigned to work a 14-hour shift.  While at work, Plaintiff observed inmates acting peculiar and reported his observations to the commanding officer.  Near midnight, Plaintiff received a hysterical call on his radio for backup inside cellblock 5/6.  When Plaintiff arrived at cellblock 5/6 he found that the approximately 33 inmates inside cellblock 5(A) were rioting.  A sallyport adjoined cellblock 5/6.  Plaintiff saw several corrections officers in the sallyport down with severe injuries, apparently from the riot.  One correction officer, Cadet Jahn, remained inside cellblock 5(A) lying face down in a pool of blood.  Similar to Plaintiff, Cadet Jahn had not completed his basic training to become a state-certified corrections officer.

Plaintiff tried to retrieve some mace and riot protection gear located inside the local control room so that he could enter cellblock 5(A) and rescue Cadet Jahn.  However, the corrections officer inside the control room, Cadet Hickey, had frozen with fear and would not

open the door.  Again, like Plaintiff, Cadet Hickey had not completed his basic training to become

a corrections officer.  Plaintiff then radioed for central control to open the door to the local

control room.  But instead of opening the door to the local control room, central control opened

the door for Plaintiff to enter the sallyport, where the injured officers were located, and the door

between the sallyport and cellblock 5(A), where inmates were rioting.  Concerned that the inmates

could escape from cellblock 5(A) through the sallyport, Plaintiff went into cellblock 5(A) without

any riot protection gear and closed the door behind him.  Plaintiff's actions locked Plaintiff and

the rioting inmates inside cellblock 5(A).

Once inside cellblock 5(A), Plaintiff positioned himself between the rioting inmates and

Cadet Jahn, who was lying on the floor.  An inmate, Anton Kilgore, who had  previously

attempted to assault Plaintiff and had stabbed a corrections officer at another CCA facility, joined

together with another inmate and attacked Plaintiff, repeatedly stabbing him with a shank in the

abdomen and head.  Because the security camera installed to monitor cellblock 5(A) was

inoperable, the inmates' attack on Plaintiff was not recorded.  Eventually reinforcement

corrections officers arrived to quell the riot.

Plaintiff's Complaint alleges that Defendants' failure to inform the corrections officers

about the reclassification of inmates, especially when coupled with their failure to train and to

staff TCDF in an appropriate manner, exhibited a "deliberate and intentional indifference to the

safety of the Corrections Officers, including Plaintiff."   Complaint at ¶ 64.  Plaintiff alleges that his

injuries were the direct result of Defendants' management and operation of TCDF.  Accordingly,

Plaintiff seeks compensatory, punitive, and other damages.

*LEGAL STANDARD*

Defendants' motions argue that Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In addition, the Court "must accept as true the plaintiff's well pleaded factual allegations and all reasonable inferences must be indulged in favor of plaintiff." *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). However, when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the Court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

*ANALYSIS*

Defendants contend that Plaintiff cannot pursue Counts I through IV in his Complaint because they are torts that are exempt from litigation by worker's compensation laws. Defendants argue that since these actions are essentially negligence actions, they fall under the exclusivity provision of worker's compensation statutes.

Ordinarily, injuries arising from the negligence of employers fall within the exclusive domain of the worker's compensation laws of New Mexico. *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 12, 131 N.M. 272, 34 P.3d 1148 (observing that worker's compensation law guarantees an injured worker fast compensation in exchange for a guarantee to the employer that any worker who is "accidentally injured, even by the employer's own negligence, will be limited to compensation under the Act and may not pursue the unpredictable

damages available outside its boundaries"). In *Delgado*, however, the Supreme Court of New Mexico held that the exclusivity provision of the state's workers compensation law does not apply to intentional or willful injuries committed by the employer. *Delgado*, 2001-NMSC-034, ¶ 24 ("We hold that when an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the Act, that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort."). To comport with *Delgado's* requirement that a worker may sue in tort when his injury was intentionally inflicted, Plaintiff has alleged that Defendants "deliberately created the hazardous conditions [at the TCDF facility], intending Plaintiff to be injured, and no affirmative steps were taken by the Defendants to protect Plaintiff against the injuries which Defendants desired to result." Plaintiff's Complaint at ¶ 74.

Defendants acknowledge that "[P]laintiff has salted his generalized allegations liberally with terms of intentionality in an effort to avoid the bar of exclusivity under New Mexico worker's compensation law." Doc. No. 4 at 2. Nevertheless Defendants urge the Court to consider Plaintiff's Complaint as if it only "sounds in negligence." *Id*. To consider Plaintiff's Complaint as though it only presented negligence actions would require the Court to ignore the relevant legal standard, which is to "accept as true the plaintiff's well pleaded factual allegations." *Shaw*, 819 F.2d at 968. Given the prevailing legal standard, the Court will decline Defendants' invitation to overlook Plaintiff's allegations of intentionality on Defendants' part.[2]

---

[2] The Court has assumed that Plaintiff and Plaintiff's legal counsel performed the appropriate factual investigation required by Fed. R. Civ. P. 11 (b) before making the allegations of Defendant's intent. If they did not, the are vulnerable to sanctions under Fed. R. Civ. P. 11 (c).

As a fall back position, Defendants argue that Plaintiff failed to plead *Delgado's* essential elements that would defeat the exclusivity provision of the worker's compensation law. However, after reading Plaintiff's Complaint and indulging in favor of Plaintiff the inferences to which he is entitled, the Court concludes that Plaintiff's Complaint satisfies the pleading requirements of *Delgado*. For instance, the first four counts in Plaintiff's Complaint allege that Defendants CCA, Donald Dorsey, Ramiro Rodriquez, and William Pennycuff, "intended, expected, and desired to harm the Plaintiff," by (1) not informing the corrections officers at TCDF that the inmates housed there had been reclassified, (2) not adequately training the corrections officers to handle maximum-security inmates, (3) not adequately staffing essential positions, (4) not repairing and maintaining security devices. Plaintiff's Complaint at ¶¶ 29, 32. Plaintiff's Complaint also alleges that "Defendants were aware, due to multiple incidents at TCDF and other CCA facilities, that using untrained and inexperienced Corrections Officers to supervise maximum security inmates would result in serious and catastrophic breakdowns in security and would result in certain injury to the Corrections Officers." *Id*. at ¶ 54. These allegations are enough to satisfy *Delgado's* requirement that an employer engage in an intentional act or omission.

Contrary to Defendants' assertions, Plaintiff's Complaint alleges that Defendants CCA, Donald Dorsey, Ramiro Rodriquez, and William Pennycuff "without justification or excuse, intentionally refused to correct any of the injury producing conditions, thereby violating acceptable industry practices." *Id*. at 71. In similar fashion, each of the *Delgado* elements were alleged in Plaintiff's Complaint, against each of these four Defendants, albeit not in the exact phraseology of *Delgado*. Yet, under the notice pleading requirements of the Federal Rules of

Civil Procedure, Plaintiff's Complaint, even though unartfully drafted, sufficiently pleaded the essential elements of *Delgado*.

Defendants also contend, in their second Motion to Dismiss, that the first two causes of action in Plaintiff's Complaint fail to state a recognized tort under New Mexico law. Plaintiff's first two causes of action are entitled "Deliberate Infliction of Injury" and "Intentional Commission of a Wrongful Act." Plaintiff claims that these causes of action were, in essence, created by the Supreme Court of New Mexico in the *Delgado* opinion. However, *Delgado* did not create these "new" torts. *Delgado* simply permitted a plaintiff to sue for a tort already recognized under state law when that tort was intentionally inflicted or willfully caused. 2001-NMSC-034, ¶ 24. For example, Michelle Delgado's complaint did not state causes of action for deliberate infliction of injury or intentional commission of a wrongful act; she sued for wrongful death and loss of consortium, prima facie tort, and intentional infliction of emotional distress. The requirement that an employer intentionally inflict or willfully cause an injury is just a threshold requirement that must be alleged and ultimately proven before any tort claim can be pursued outside of the worker's compensation scheme. Hence, Plaintiff's first two causes of action are not, by themselves, cognizable legal theories under New Mexico's tort law.

Nevertheless, it is apparent that Plaintiff may have been attempting to state claims under recognized legal theories. In responding to Defendants' Motion to Dismiss the Complaint Pursuant to FRCP 12(b)(6), Plaintiff has argued that "Defendants engaged in conduct constituting the intentional tort of battery as a matter of conscious corporate decision-making and intended to harm Plaintiff." Doc. No. 6 at 7. If by alleging either deliberate infliction of injury or intentional commission of a wrongful act Plaintiff intended to assert a claim for battery, Plaintiff should be

8

allowed the opportunity to amend his Complaint so that it explicitly states a recognized tort

theory.  Plaintiff will be allowed until August 1, 2003 to file an amended complaint to substitute

any recognized tort actions in place of Counts I and II of his original Complaint.  If Plaintiff fails

to so amend his Complaint, Count I and II will be dismissed.

　　　　With regard to Count V of Plaintiff's complaint, which is asserted against only Torrance

County, Defendant Torrance County argues that since Plaintiff's complaint failed to "assert the

provision in the Tort Claims Act constituting a waiver of immunity," it must be dismissed.  Doc.

No. 4 at 4.  However, Plaintiff is not required to allege a waiver of sovereign immunity in his

Complaint.  Sovereign immunity is an affirmative defense that must be plead by the defendant.

*Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) (noting that sovereign

immunity is in the nature of an affirmative defense that may be asserted or waived at a state's

discretion).  Thus, any failure to allege a specific waiver of immunity that would apply under New

Mexico's Tort Claims Act does not make Plaintiff's Complaint legally deficient.

　　　　In the alternative, Defendant Torrance County asserts a claim of sovereign immunity by

contending that no waiver of immunity exists for its negligence under the Tort Claims Act.

Defendant Torrance County attempts to buttress its position by characterizing Plaintiff's claim

under Count V as one for negligent supervision.  Certainly, "a claim of negligent supervision,

standing alone, is not sufficient to bring a cause of action within [a] waiver of immunity" of the

Tort Claims Act.  *Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 8, 123 N.M. 353, 940 P.2d

459.  However, Plaintiff's Complaint specifically alleges that Torrance County "was responsible

for maintenance and operation of the TCDF and owed a[] duty to Plaintiff to exercise ordinary

care to keep the premises safe."  Plaintiff's Complaint at ¶ 85.  This allegation is sufficient to

invoke the Tort Claims Act waiver for building maintenance and operation under NMSA 1978, § 41-4-6 (1977). *Leithead*, 1997-NMCA-041, ¶ 8 (holding that a complaint that alleged an injury to a swimmer due to an inadequate number of lifeguards at a swimming pool stated a claim under the waiver of immunity for the maintenance and operation of any building under § 41-4-6).

Defendant Torrance County also argues that Count V fails to state a claim upon which relief can be granted since private individuals from CCA run the jail facility, and not county employees. According to Defendant Torrance County, unless the negligence of public employees caused Plaintiff's injuries the action must be dismissed. However, the maintenance and operation of a county jail, even if performed by a private corporation, falls under the public function test for state action. *Giron v. Corrections Corporation of America*, 14 F. Supp. 2d 1245, 1249 (D.N.M. 1998) ("The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state. This is a truly unique function and has been traditionally and exclusively reserved to the state.") (Hansen, J.). When the state is obligated to fulfill certain constitutional standards, "it cannot avoid those obligations and deprive individuals of their constitutionally protected rights by delegating government functions to the private sector. *Id*. at 1250; *Cobos v. Doña Ana County Housing*, 1998-NMSC-049,126 N.M. 418, 970 P.2d 1143 (holding that a duty under § 41-4-6 "may arise from sources other than the ownership status of real property," and may spring from statutes, regulations, or contracts). Plaintiff's Complaint alleges that Defendant Torrance County owed a nondelegable duty "to Plaintiff to exercise ordinary care to keep the premises at TCDF safe." Plaintiff's Complaint at ¶¶ 85, 88. Additionally, Plaintiff's complaint alleges that Torrance County breached that duty, and that Defendant Torrance County's breach of

its duty caused Plaintiff's injuries.  Reviewing Plaintiff's Complaint as a whole, Plaintiff's

allegations are sufficient to survive Defendant Torrance County's Motion to Dismiss Count V.

Finally, Count VI of Plaintiff's Complaint alleges an action for violation of civil rights

against all five Defendants.  Defendants argue that the allegations contained in Count VI simply

fail to place Defendants "on notice of what the legal basis for this claim is intended to be."  Doc.

No. 4 at 7.  This is an odd contention for Defendants to make given that they removed this action

to federal court because Count VI alleged that Defendants deprived Plaintiff "of his Fourteenth

Amendment Constitutional rights."  Doc. No. 1 at 3.  Plaintiff's Complaint makes sufficient

factual allegations to place Defendants on notice that Plaintiff is proceeding under a danger

creation theory, which, as Defendants acknowledge, is a Fourteenth Amendment substantive due

process claim properly brought under 42 U.S.C. § 1983.  Given the substance of Plaintiff's

allegations, which must be taken as true, the Court cannot say that it is "beyond doubt that the

[P]laintiff could prove no set of facts in support of his claim which would entitle him to relief."

*Conley*, 355 U.S. at 45-46.  Nevertheless, the Court understands Defendants' concern that Count

VI could be read to include a variety of constitutional or statutory claims.  Hence, with regard to

Count VI, Plaintiff will be limited to arguing his danger creation theory as a denial of substantive

due process in violation of the Fourteenth Amendment unless by August 1, 2003 he amends his

complaint to add other, clearly supported, causes of action.

Defendant CCA argues that it cannot be sued under 42 U.S.C. § 1983 because it is a

private corporation.  According to Defendant CCA, a private corporation cannot act under the

color of state law, an necessary prerequisite for a 42 U.S.C. §1983 action.  However, anytime a

private corporation assumes the responsibilities and authority of the state, that private corporation

11

"becomes the state for purposes of state action."  *Giron*, 14 F. Supp. 2d at 1249 (applying the public function test to determine whether private actors are operating under the color of state law).  Hence, Defendant CCA's argument that its private status exempts it from § 1983 liability is without merit.

Although Defendants again urge the Court to consider the sufficiency of Plaintiff's evidence supporting Count VI, the legal standard for review under Fed. R. Civ. P. 12(b)(6) prevents the Court, at this stage of the case, from questioning the factual allegations asserted in Plaintiff's Complaint.  Specifically, Defendants question whether the evidence offered by Plaintiff truly shocks the conscience, an essential element of a substantive due process claim. Considerations of this nature should be addressed in a summary judgment motion under Fed. R. Civ. P. 56, not in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), where the Court must accept Plaintiff's factual allegations as true.

IT IS THEREFORE ORDERED that:

(1)    Defendants' Motion to Dismiss the Complaint Pursuant to FRCP 12(b)(6) is DENIED;

(2)    Defendants' Motion to Dismiss Counts I and II of the Complaint is GRANTED;

(3)    No later than August 1, 2003 Plaintiff may file an amended complaint substituting recognized tort causes of action in place of the theories asserted in Counts I and II; and

(4)    If Plaintiff does not file the permitted Amended Complaint by August 1, 2003, Count I and Count II of Plaintiff's Complaint will be dismissed.

_____
CHIEF UNITED STATES DISTRICT JUDGE